THE HIDE AND LEATHER NATIONAL BANK

V.

JOHN WEST ET AL.

1. SALE ON BOARD OF TRADE—DELIVERY OF WAREHOUSE RECEIPTS—BANK BONA FIDE PURCHASER.—About noon on August 8, 1884, plaintiffs sold on the Board of Trade to D. & Co. (both parties being members of said board) 5,000 bushels of corn, at an agreed rate per bushel, for cash, the transaction to be closed before three o'clock of that afternoon. The sale was accordingly closed by D. & Co. making and delivering to plaintiffs their

two checks drawn upon defendant bank (with which D. & Co. kept an account) and payable to plaintiffs' order, and at the same time plaintiffs delivered to D. & Co. the two warehouse receipts for the corn. Near the close of banking hours, on the same day, D. & Co. took the receipts to defendant bank, and their account being overdrawn, they made a memorandum draft upon New York for $2,300, attached the warehouse receipts thereto as collateral, and delivered the whole to the bank and obtained credit for $2,300. Plaintiffs deposited the checks in their own bank, which was not defendant bank, and the next day, when the checks were sent through the clearing house, D. & Co. had failed, and the checks were never paid. Plaintiffs bring an action of trover against defendant bank to recover the value of such warehouse receipts. The court is of opinion that from the clear weight of the evidence the bank stood in the relation of a *bona fide* purchaser for a valuable consideration, and without notice of any of the matters between plaintiffs and D. & Co. affecting the title of the latter to the warehouse receipts, and without any circumstances sufficient to put the bank upon inquiry.

2. As BETWEEN VENDOR AND VENDEE.— As between plaintiffs and D. & Co., since the sale was for cash and the delivery of the warehouse receipts was with the expectation that the checks were good and would be paid, upon its turning out that they would not be paid plaintiffs were at liberty to regard such delivery as conditional and at once to reclaim the property.

3. INSOLVENT VENDEE—FRAUD.—The mere fact that a vendee was insolvent the next day after the purchase and might have been at the time of the purchase, is not sufficient for the basis of a charge of fraud in the purchase.

4. INSTRUCTIONS.—As there was no evidence, sufficient to go to the jury, that the bank or any of its officers or agents acted in bad faith in acquiring or holding the warehouse receipts, it was error to submit such question to the jury in the instruction given.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed June 28, 1885.

This was an action of trover brought by appellees, West, Andress & Co., commission merchants, against the appellant, Hide and Leather National Bank, both of Chicago, to recover for the alleged wrongful conversion of two warehouse receipts for corn of plaintiffs, issued by the Wabash elevator, one of which, bearing date Jan. 31, 1884, was issued to Culver & Co. for 3,696 bushels, the other of date Feb. 5, 1884, was issued to Ricord & Brother for 1,571 bushels. The plea was general issue.

Hide and Leather National Bank v. West.

It appeared that August 8, 1884, West, Andress & Co., being members of the Chicago Board of Trade, as well as the firm of George B. Dickinson & Co., the former, about noon of that day, agreed on the board to sell to the latter five thousand bushels of corn for cash, the transaction to be closed before three o'clock P. M. of that day; that in closing said transaction, a short time before three o'clock, West, Andress & Co. delivered to said Dickinson & Co. the two warehouse receipts in question, and took, in payment of the corn, two checks of Dickinson & Co , payable to the order of West, Andress & Co., upon said Hide and Leather National Bank, one of which was for $1,636.85, and the other for $695.49. Although the checks were received by West, Andress & Co. before the close of banking hours of that day, they were not presented to the bank on which they were drawn, but deposited by West, Andress & Co. in the bank where they did business, so that in going through the clearing house on the next day, August 9th, they were not paid and never have been since. It appeared that near the close of banking hours on the 8th of August, the said Dickinson & Co., who had been doing banking business with the said Hide and Leather Bank for a considerable period of time, and having on that day overdrawn their account there, brought in the said warehouse receipts as it was their custom to do, and transferred them to the bank as security for such overdraft. The transaction was effected by Dickinson & Co. drawing a draft on McIntire & Wardell, New York, for twenty-three hundred dollars, payable to the order of the Hide and Leather Bank. This was called a memorandum draft, and was but a form adopted for effecting an assignment of the warehouse receipts, which were duly indorsed to the parties to whom given. The bank placed the amount to the credit of Dickinson & Co.

There was no evidence tending to show that before or at the time of taking the assignment of said receipts, the bank or any of its officers or agents had any notice of how or from whom Dickinson & Co., who were a business house in good credit, had obtained them. Nor did the evidence tend to show any circumstances sufficient to put them upon inquiry, as to the title of Dickinson & Co., to said receipts.

It appears that August 9, 1884, after said checks were thrown out at the clearing house, West, Andress & Co. demanded of the Hide and Leather Bank the receipts or the money, which request was denied.

The court, among other instructions, given at the instance of the plaintiffs, gave the following:

"If the jury believe from the evidence that the defendant is not an innocent holder of said warehouse receipts as explained in the foregoing instruction, or if the jury believe from the evidence that there was bad faith on the part of the defendant in acquiring and holding said receipts, then the defendant has no better right or title to said receipts as against the plaintiffs than said Dickinson & Co. had at the time Dickinson & Co. deposited said receipts with the defendant. The term bad faith, as used in this instruction, means actual knowledge on the part of the bank that Dickinson & Co. were not the owners of the receipts, or the corn represented by them, at the time they were delivered to the bank, or actual knowledge of some fraud by Dickinson & Co. upon the plaintiffs in getting possession of the receipts."

The jury found the defendant guilty, assessed plaintiffs, damages at two thousand and thirty-six dollars and seventy-eight cents, for which the court, overruling defendant's motion for a new trial, gave judgment, and the defendant appealed to this court.

Messrs. WILSON & ZOOK, for appellant; cited McCormick v. Hadden, 37 Ill. 370; Ketchum v. Watson, 24 Ill. 591; Butters v. Haughwout, 42 Ill. 18; Chicago Dock Co. v. Foster, 48 Ill. 507; Ohio & M. Ry. Co. v. Kerr, 49 Ill. 459; Holland v. Swain, 94 Ill. 154; Hall v. Hinks, 21 Md. 416; Rowley v. Bigelow, 12 Pick. 312.

It is a presumption of law that a person is the owner of personal property in his possession: Bergen v. Riggs, 34 Ill. 170; Amick v. Young, 69 Ill. 542; 1 Greenleaf on Ev., § 34; Roberts v. Haskell, 20 Ill. 64.

Messrs. FRANK J. SMITH & HELMER, for appellees; cited Canadian Bank v. McCrea, 106 Ill. 298.

Hide and Leather National Bank v. West.

MCALLISTER, J.    About noon of the 8th of August, 1884, the plaintiffs below, West, Andress & Co., sold on the Chicago Board of Trade to George B. Dickinson & Co. (both parties being members of said board) five thousand bushels of corn, at an agreed rate per bushel, for cash, the transaction to be closed up before three o'clock of the afternoon of that day. Dickinson & Co. then and for a long time previously, had been commission merchants in good credit, and customers of the Hide and Leather National Bank, the defendant below, and had an account therewith. Before three o'clock of that afternoon, said sale was closed up by Dickinson & Co. making and delivering to plaintiffs their two checks drawn upon said bank and payable to the order of said West, Andress & Co., one of which was for $1,636.85 and the other for $695-.49, said amounts together covering the price of the corn sold, and West, Andress & Co., at the same time, delivered to Dickinson & Co. the two warehouse receipts in question, as and for the corn so sold.

West, Andress & Co. did not present said checks for payment to said bank on that day, but instead, deposited them in their own bank, so that by the usage of business they would go through the clearing house on the next day, August 9, 1884.    When sent to the clearing house Dickinson & Co. had failed, and they were neither of them paid.    It appears, however, that near the close of banking hours, August 8th, the day of the sale, Dickinson & Co. brought said warehouse receipts to the Hide and Leather National Bank, and their account there being then overdrawn, they made an arrangement with the cashier to transfer them to the bank and obtain credit for the sum of twenty-three hundred dollars thereby.    This was effected by Dickinson & Co. drawing a draft on New York for that amount, to which the warehouse receipts were pinned and all delivered to the bank, the latter giving Dickinson & Co. credit for that amount, and the undisputed evidence is that the bank had paid out the whole amount on checks of Dickinson & Co., except about two hundred and twenty dollars, before any of its officers or agents had any notice of the

transaction or any part of it between West, Andress & Co. and Dickinson & Co., in respect to the sale of said corn.

After the checks were thrown out at the clearing house, which was after e'even o'clock, A. M., of August 9th, West, Andress & Co. went to the defendant bank and demanded the return of the receipts or the money on the checks, which, as it appears, is the first time the bank had any notice respecting the transaction between the parties to the sale of said corn. The bank refusing to comply, this action of trover was brought against the bank, resulting in a verdict and judgment against the latter, for the value of said corn.

As between the plaintiffs below and Dickinson & Co., the sale being for cash, and the delivery of the warehouse receipts being with the expectation that the checks were good and would be paid, upon its turning out that they were not good, we think West, Andress & Co. were at liberty to regard such delivery as conditional, and at once reclaim the property. Paul v. Reed, 52 N. Hamp. 136; Canadian Bank v. McCrea, 106 Ill. 298.

But we are also of the opinion that, under the circumstances of the case, if the bank stood in the relation of a *bona fide* purchaser, for a valuable consideration, without notice, then West, Andress & Co. had no right to reclaim the property in question, as against the bank. See M. C. R. R. Co. v. Phillips, 60 Ill. 190, where the questions involved in this branch of the case are fully discussed and settled.

We have examined the evidence preserved by the bill of exceptions, and are of opinion that from the clear weight and preponderance of the evidence, the bank stood in the relation of a *bona fide* purchaser of the warehouse receipts in question for a valuable consideration, and without notice of any of the matters between plaintiffs and Dickinson & Co. affecting the title of the latter thereto, and without any circumstances sufficient to put the bank upon inquiry.

The case is totally barren of any evidence tending to show that Dickinson & Co. made any false representations to the plaintiffs or resorted to any trick or artifice at the time of the purchase. It is true, the evidence shows that they were in-

solvent the next day, and might have been so at the time of the purchase. That mere fact, however, is not sufficient for the basis of a charge of fraud in the purchase. Cross v. Peters, 1 Greenl. 376; Chit. on Con., 10 Am. Ed., 430.

There was no evidence sufficient to go to the jury, that the bank, or any of its officers or agents, acted in bad faith in acquiring or holding said warehouse receipts. Yet, by the instruction given for the plaintiffs (and set out in our statement of the facts of this case), the court assumed that Dickinson & Co. were guilty of some fraud in obtaining possession of the receipts, and submitted to the jury the question of bad faith, as defined by the instructions in acquiring and holding them.

As the case stood upon the evidence, that instruction was well calculated to supplement what was wanting in the evidence, and to mislead the jury; because it amounted to an assumption on the part of the court, by submitting such questions to the jury, that there was evidence tending to show that the bank had knowledge, at the time that it took a transfer of the warehouse receipts, that Dickinson & Co. were not the owners of the receipts or the corn represented by them, and had actual knowledge of some fraud by Dickinson & Co. upon the plaintiffs in getting possession of them, when in truth and in fact, there was no evidence tending to show any such knowledge on the part of the bank or any of its officers or agents; but the evidence was the other way.

We think the verdict was unsupported by the evidence, and that said instruction was fatally erroneous. For which reasons the judgment must be reversed and the cause remanded.

Reversed and remanded.